UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEIDRE B.L.,[1] | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-366-MG-JPH |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| *Defendant.* | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

In January 2018, Plaintiff Deidre B.L. applied for Title VII Supplemental Security Income Benefits ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date of February 2, 2018. [Filing No. 8-10 at 2-10.] His application was initially denied on April 13, 2018, [Filing No. 8-4 at 2-12], and upon reconsideration on August 17, 2018, [Filing No. 8-4 at 13-24]. Administrative Law Judge Marc Jones (the "ALJ") conducted a telephonic hearing on July 12, 2021. [Filing No. 8-3 at 2-46.] The ALJ issued a decision on August 13, 2021, concluding that Deidre B.L. was not entitled to receive benefits. [Filing No. 8-2 at 26.] The Appeals Council denied review on December 28, 2021. [Filing No. 8-2 at 2-4.] On February 21, 2022, Deidre B.L. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 6.] For the following reasons, the Court **AFFIRMS** the decision of the ALJ denying Deidre B.L. benefits.

# I.
## STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built

---

[2] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform His past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform His own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's

decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Deidre B.L. was 30 years old on January 24, 2018—the date of his alleged onset of disability. [Filing No. 8-10 at 2; Filing No. 8-11 at 2.] Deidre B.L. had a limited education, completing through 10th grade, and had past work experience as a greeter and host. [Filing No. 8-11 at 15.] Deidre B.L.'s application alleges that he can no longer work because he has bi-polar disorder, PTSD, anxiety, and autism. [Filing No. 8-11 at 14.] Following the July 2021 hearing, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Deidre B.L. was not disabled. [Filing No. 8-2 at 13-26.] Specifically, the ALJ found as follows:

- At Step One, Deidre B.L. has not engaged in substantial gainful activity[3] since January 24, 2018 (the application date). [Filing No. 8-2 at 18.]

- At Step Two, Deidre B.L. "has the following severe impairments: anxiety disorder; Asperger's syndrome; bipolar disorder; depressive disorder; and unspecified gender dysphoria." [Filing No. 8-2 at 18.]

- At Step Three, Deidre B.L. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 8-2 at 19.] As to the "paragraph B" criteria for Listings

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- 12.04, 12.06 and 12.10, the ALJ found that Deidre B.L. had "moderate" limitations in all four areas: (1) interacting with others, (2) concentrating, persisting, or maintaining pace ("CPP"), (3) understanding, remembering, or applying information and (4) adapting or managing oneself. [Filing No. 8-2 at 19-20.]

- After Step Three but before Step Four, Deidre B.L. had the RFC "to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to simple work-related decisions and simple, routine tasks with no assembly line work or strictly enforced daily production quotas. The claimant can never interact with the general public. The claimant can work in proximity to other coworkers, but only with brief, incidental interaction with other coworkers and no tandem job tasks requiring cooperation with other coworkers to complete the tasks. The claimant can work where supervisors occasionally interact with him throughout the workday." [Filing No. 8-2 at 20.]

- At Step Four, the ALJ found Deidre B.L. had no past relevant work. [Filing No. 8-2 at 25.]

- At Step Five, considering the Deidre B.L.'s age, education, work experience, the RFC, and the Vocational Expert's ("VE") testimony, the ALJ found Deidre B.L. was not under a disability from January 24, 2018, the alleged onset date, through September 30, 2020, the date last insured. [Filing No. 8-2 at 25.]

### III.
### DISCUSSION

Deidre B.L. argues that: (1) the ALJ erred in considering Deidre L.'s impairments under 12.04 and 12.06 when evaluating the paragraph B criteria of interacting with others and adapting and managing oneself; and (2) the ALJ erred in his SSR 16-3p subjective symptom analysis due to an improper credibility determination. [Filing No. 17 at 1.]

A.   **Step Three Paragraph B Criteria**

Deidre B.L. contends that the ALJ's listing analysis was not supported, claiming he had grater limitations in the functional paragraph B areas of interacting with others and adapting and managing oneself. [Filing No. 17 at 19-22.] He lists a host of allegedly ignored evidence, namely: (1) the ALJ's citation to the disability field report was in error because the claim was done over the phone and he had difficulty recalling dates and events; (2) he had only three dates in a three-year

5

period where the case manager noted good eye contact; (3) he was unable to go out without his mother into a workplace; (4) he has a lengthy history that clearly shows no personal goals have been met; (5) he has no ability to regulate emotions, control behavior or maintain his wellbeing; and (6) his journaling and doing chores upon reminders from his mother does not negate his inability to go out alone. [Filing No. 17 at 20-22.]

The Commissioner argues that the ALJ reasonably evaluated the paragraph B criteria as to Deidre B.L.'s mental impairments, and he has failed to show any error in the ALJ's evaluation or identify evidence the ALJ failed to consider or that would compel a greater limitation finding. [Filing No. 19 at 18.] The Commissioner contends that Deidre B.L.'s arguments amount only to a disagreement with the ALJ's weighing of the evidence, which is not a basis for remand. [Filing No. 19 at 18.] Further, the Commissioner contends that the ALJ found basis for his conclusions in Diedre B.'s own reports along with the objective evidence. [Filing No. 19 at 19.]

In reply, Deidre B.L. contends the ALJ only evaluated medical evidence starting in 2018, when there was a history of disability since 1999, and that while this information was available to the ALJ, the medical consultants only reviewed a portion of the records. [Filing No. 20 at 3.] Further, he contends the ALJ had mental health records through June 2021, three years past the medical evidence reviewed by any agency medical consultants, and as such, the consultants' disability determinations were based on defective records. [Filing No. 20 at 4.] Lastly, he contends that both his and his mothers' statements support that he was unable to function on a day-to-day basis without support. [Filing No. 20 at 4.]

The criteria in paragraph B are identical for both relevant mental disorder listings: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P,

App'x 1, § 12.00(A)(2)(b). To satisfy the paragraph B criteria, a claimant must have limitations rated "marked" in two of these areas, or "extreme" in one of the areas. *Id.* The rating scale ranges from no limitation to extreme limitation; no limitation is self-explanatory; a mild limitation is defined as "functioning in this area independently, appropriately, effectively and on a sustained basis is slightly limited"; a moderate limitation is defined as "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair;" a marked limitation means "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited;" and an extreme limitation means the claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.* at § 12.00(F)(2). Here, the ALJ found that Deidre B.L. had moderate limitations in all paragraph B areas, including in the functional areas of interacting with others and adapting and managing oneself. [Filing No. 8-2 at 19-20.]

Regarding interacting with others, the ALJ noted that Deidre B.L. testified to having panic attacks around too many people and suffers from paranoia. [Filing No. 8-2 at 19.] The ALJ noted that Deidre B.L. did not have issues interacting with the field office employees, noting this interaction did not undermine the reports of panic attacks in crowds, but noted it as a piece of evidence regarding social functioning. [Filing No. 8-2 at 19.] The ALJ also noted that Diedre B.'s socialization had improved and that he maintained good eye contact. [Filing No. 8-2 at 19.] Further, the ALJ noted that Deidre B.L. was generally cooperative, often engaged easily, and reported talking to his friends on Skype daily. [Filing No. 8-2 at 23.] The ALJ pointed to further evidence that Deidre B.L. reported minimal complaints regarding paranoia of bed bugs, and there is no mention of specific panic attacks in the record, other than those he testified to. [Filing No. 8-2 at 24.]

7

As for the limitation of adapting and managing oneself, the ALJ noted the function report from Deidre B.'s mother who stated he could not handle stress or changes in routine well. [Filing No. 8-2 at 20.] The ALJ referred to evidence supporting Deidre B.L.'s ability to manage stress via journaling and reading. [Filing No. 8-2 at 21-23.] Further, the ALJ's discussion of the record noted that Deidre B.L. was often calm at appointments, was motivated for skills trainings, had logical thought processes, reports of making progress and dealing better with stress, and he could care for his personal needs with some issues, care for his cat, cook simple meals, vacuum, and empty the garage. [Filing No. 8-2 at 21-23.]

In sum, Deidre B.L. disagrees with how the ALJ considered the evidence, but the ALJ gave a sufficient explanation to build the requisite "logical bridge between the evidence and the result" when making his Step Three findings. *Beardsley*, 758 F.3d at 837. The ALJ clearly explains throughout the opinion how Deidre B.L.'s work history, treatment history, and daily activities since the alleged onset date all cut against other evidence.

In accordance with the standard of review, the Court declines to reweigh the evidence of record and independently determine the precise severity-level of limitations with the contested domains. The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the https://plus.lexis.com/document/teaserdocument/?pdmfid=1530671&crid=971cba08-e610-47d2-8848-83415419c2d1&pddocfullpath=%2Fshared%2Fdocument%2Fcases%2Furn%3AcontentItem%3A66WS-HJ81-FBFS-S0M4-00000-00&pddocid=urn%3AcontentItem%3A66WS-HJ81-FBFS-S0M4-00000-00&pdcontentcomponentid=6417&pdteaserkey=h1&prid=8132207a-9c7f-40b1-ab4b-bab998f5d0fc&ecomp=674k&earg=sr2 evidence that undermines it." *Moore v. Colvin*, 743 F.3d

8

1118, 1123 (7th Cir. 2014) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore*, 743 F.3d at 1123 (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

Here, the Court reading the ALJ opinion as a whole, finds the ALJ adequately confronted the conflicting evidence pointed to by Deidre B.L. and discussed above. *See Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir.2004) ("[I]t is proper to read the ALJ's decision as a whole, and ... it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five"); *see also Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir.1985) ("[W]e examine the [ALJ]'s opinion as a whole to ascertain whether he considered all of the relevant evidence, made the required determinations, and gave supporting reasons for his decisions.").

Lastly, Deidre B.L. contends that the ALJ erred by not engaging a medical expert to address a meeting or equaling of listings 12.04 and 12.06 because the only medical opinions in the record were outdated, and because of this the RFC did not sufficiently capture Deidre B.L.'s concentration limitations. [Filing No. 17 at 20-21.] The Court notes that ALJs are responsible for assessing a claimant's paragraph B limitations, not experts. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Further, it is not error for an ALJ to rely on the state agency doctors' opinions if there are no new, significant medical diagnoses that could reasonably change their opinions. *See Moreno v. Berryhill*, 882 F.2d 277 (7th Cir. 2018). Here, Deidre B.L. has not identified new medical diagnoses that the state agency medical consultants did not consider, similarly noting that he has experienced these many symptoms since his childhood. And, although the ALJ has a duty to develop a full and fair record, *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009), it is the

9

claimant's burden, not the ALJ's, to prove that he is disabled, *Summers*, 864 F.3d at 527. That is particularly true here where the claimant is represented by counsel. *Id.* Applying these principles, the Court finds no error with the ALJ's development of the record.

### B.   SSR 16-3p Subjective Symptom Analysis

Deidre B.L. next contends that the ALJ erred in his SSR 16-3p subjective symptom analysis due to an improper credibility determination, namely that without medical advice, the ALJ only reviewed three years of medical notes and did not confront his inability to function independently and created restrictions without addressing key issues. [Filing No. 17 at 14.]

The Commissioner contends that the ALJ reasonably considered Deidre B.L.'s medical record and subjective reports. [Filing No. 19 at 10.] The Commissioner argues that the ALJ also considered Deidre B.L.'s mother's reports, medical records, and therapy records. [Filing No. 19 at 10-11.] The Commissioner states that the ALJ properly considered his subjective statements in comparison to the record evidence for consistency, and whether the reported symptoms were as severe as alleged. [Filing No. 19 at 11-12.] Lastly, the Commissioner notes that the ALJ did not discount his reports of disabling symptoms entirely, rather he included some social limitations to account for Deidre B.L.'s symptoms. [Filing No. 19 at 12.]

An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shidler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, the ALJ must provide specific reasons supporting his or her evaluation that are supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

SSR 16-3p addresses the method by which ALJs should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, *available at* 2017 WL 5180304, at *1. SSR 16-3p eliminates "the use of the term 'credibility'" from the

evaluation process and clarifies that "subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." *Id.* at *1. SSR 16-3p instructs ALJs to use the following method to evaluate statements regarding the intensity, persistence, and limiting effects of symptoms:

> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult.

*Id.* at *2. Thus, ALJs use a two-step evaluation of an individual's subjective symptoms. First, an ALJ must determine whether a claimant has "an underlying medically determinable physical or mental impairment that could reasonably be expected to produce an individual's symptoms." *Id.* at *3.

If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves the second step in which the ALJ must consider all the evidence in the record to evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. To conduct this analysis at the second step, SSR 16-3p instructs as follows:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; and individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

*Id.* at *4. When assessing credibility of a claimant's symptom testimony, the ALJ also considers the factors set forth in 20 C.F.R. § 416.929(c)(3), *i.e.*, (1) a claimant's daily activities, (2) the location, duration, frequency of the pain or other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication, (5) treatment

received for relief of pain or other symptoms, (6) measures the claimant uses to relieve pain or other symptoms, and (7) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *Id.*

Ultimately, the ALJ must explain the subjective symptom analysis "in such a way that allows [a court] to determine whether [the ALJ] reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." (internal quotations omitted). And, "[n]ot all of the ALJ's reasons must be valid," to uphold a subjective symptom finding, "as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009).

At Step One, the ALJ found that Deidre B.L.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms." [Filing No. 8-2 at 23.] However, at Step Two, Deidre B.L.'s "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Filing No. 8-2 at 23.] The ALJ provided the following reasons to support this finding at Step Two: (1) medical findings did not support the limitations to which Deidre B.L. testified; (2) Deidre B.L.'s symptoms improved with medication and therapy; (3) the ALJ included social limitations consistent with Deidre B.L.'s testimony and medical opinion evidence; and (4) his daily activities showed he was more social and was able to function more independently than Deidre B.L. testified. [Filing No. 8-2 at 23-24.]

Deidre B.L. takes issue with the ALJ's consideration of his daily activities, the ALJ's characterization of his ability to interact with others, and the ALJ's mention that he was going to draw pictures for a website as a showing he could work. He argues that the ALJ did not confront his non-compliance with medications, namely Seroquel. [Filing No. 19 at 16-17.] Next, he contends that while the medical consultants found him moderate limited in interacting with others,

this is not supported by the record where he does not interact with others outside a computer. [Filing No. 17 at 20.] Additionally, he notes continued conflicts with his mother and acquaintances. [Filing No. 17 at 20.]

In making the RFC determination and regarding daily activities, ALJs may not "equat[e] activities of daily living with an ability to work." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). "But it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." *Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022) (quoting *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016)).

We consider whether the ALJ improperly equated Deidre B.L.'s daily life activities and relationships with an ability to work, or properly considered this evidence as one among several factors in discrediting Deidre B.L.'s testimony about his social limitations. The records clearly reflect that Deidre B.L. was not free of mental health symptoms which limited his social interactions, but they do not demonstrate that the ALJ failed to recognize and consider his continuing symptoms. Deidre B.L. testified that his mother helps him with things, including showering. The ALJ noted that in the function report, Deidre B.L. stated he talked with friends via Skype on a daily basis, reported he took care of his cat and his own personal needs with some issues, cooked simple meals, vacuumed the floors, and emptied the trashcans, he walked to work in July 2018, he began doing household chores in November 2018, and in April 2019 he was going to draw pictures for a website. [Filing No. 8-2 at 23-24.] The ALJ also noted that Deidre B.L. discussed relationship difficulties in therapy—namely issues with his mother, friends, and former/current boyfriend. [Filing No. 8-2 at 21-23.] The ALJ gave less weight to Deidre B.L.'s mother's statements because his mother was not a medical professional. The ALJ also weighed the

13

medical evidence regarding Deidre B.L.'s mental health but did not defer or give specific evidentiary weight to any prior medical findings or opinions.

Contrary to Deidre B.L.'s argument, the ALJ considered the fact that Deidre B.L.'s communications with people occurred via the computer and that his chores were done at home and did not suggest that these occurred outside the home. [Filing No. 8-2 at 23-24.] The ALJ also appears to have noted Deidre B.L.'s statement that he could draw pictures for a website but does not appear to equate such a statement to his ability to work. [Filing No. 8-2 at 23.] Further, the ALJ considered this evidence as one of many factors in discrediting Deidre B.L.'s testimony about his social limitations.

As we have repeatedly held, "it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." *Prill*, 23 F.4th at 748 (quoting *Alvarado*, 836 F.3d at 750). Based on Deidre B.L.'s interpersonal difficulties, the ALJ tailored his social interaction limitations of the RFC to "never interact[ing] with the general public. The claimant can work in proximity to other coworkers, but only with brief, incidental interaction with other coworkers and no tandem job tasks requiring cooperation with other coworkers to complete the tasks. The claimant can work where supervisors occasionally interact with him throughout the workday." [Filing No. 8-2 at 20.] The ALJ's consideration of Deidre B.L.'s social limitations in light of many different factors—including his daily activities and relationships—is manifest from the ALJ's tailored RFC limitation finding.

Lastly, regarding Deidre B.L.'s contention that the ALJ did not explore why he was non-compliant with taking Seroquel, it appears from the record that the ALJ recognized Deidre B.L.'s reported fears of starting the medication, but noted he ultimately began taking it after repeated

recommendations by his psychiatrist. [Filing no. 8-2 at 22-23 (citing Filing No. 8-22 at 16; Filing No. 8-23 at 28, 46; Filing No. 8-26 at 6-7; Filing No. 8-28 at 13).] The ALJ appropriately considered Deidre B.L.'s reasons for not pursuing recommended treatment.

In examining the ALJ's decision we may "not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus*, 994 F.3d at 900. Even if reasonable minds could disagree on whether a claimant is disabled based on the record evidence, a reviewing court must affirm the Commissioner's decision to deny benefits if the decision is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). We acknowledge that reasonable minds can disagree about whether Deidre B.L.'s social limitations are severe enough to preclude work. However, the ALJ did not equate Deidre B.L.'s daily activities and relationships with his work ability. Rather, the ALJ considered this record evidence as one of several factors to find that Deidre B.L.'s social limitations, while restrictive of the kinds of work he could perform, did not prevent him from employment and, thus, that he was not disabled.

## IV.
### Conclusion

For the reasons detailed above, the Court **AFFIRMS** the ALJ's decision denying Deidre B.L. benefits. Final judgment will issue by separate entry.

Date: 3/24/2023

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**